IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE ST. GEORGE GREEK ORTHODOX CHURCH OF NORWALK, CONNECTICUT, INC. | ) ) ) | |
| Plaintiff, | ) | COMPLAINT |
| v. | ) | Civil Action No. _____ |
| CITY OF NORWALK, CITY OF NORWALK CITY COUNCIL, CITY OF NORWALK PLANNING AND ZONING COMMISSION, CITY OF NORWALK ZONING ENFORCEMENT OFFICER, in his or her official capacity, CITY OF NORWALK ZONING INSPECTOR, in his or her official capacity and STEVEN KLEPPIN, CITY OF NORWALK PLANNING & ZONING DIRECTOR, in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff THE ST. GEORGE GREEK ORTHODOX CHURCH OF NORWALK, CONNECTICUT, INC., by its undersigned attorneys, hereby brings this Complaint against Defendants CITY OF NORWALK, CITY OF NORWALK CITY COUNCIL), CITY OF NORWALK PLANNING AND ZONING COMMISSION, CITY OF NORWALK ZONING ENFORCEMENT OFFICER, in his or her official capacity, CITY OF NORWALK ZONING INSPECTOR, in his or her official capacity, and STEVEN KLEPPIN, CITY OF NORWALK PLANNING & ZONING DIRECTOR, in his official capacity (collectively, "Defendants"), and alleges as follows:

**NATURE OF ACTION**

1. The Church commences this action to redress violations of its civil rights, as protected by the First, Fifth, and Fourteenth Amendments to the United States Constitution, enforceable through 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §

1

2000cc *et seq.* ("RLUIPA"), and Connecticut's Religious Freedom Act, Conn. Gen. Stat. § 52-571b, caused by Defendants' burdensome, discriminatory, and unreasonable zoning laws and application of zoning laws, land use determinations and intentional conduct that prohibits the Church from operating its church community center on its property located in Norwalk, Connecticut.

2. The Church appeals under Conn. Gen. Stat. § 8-8 from the Commission's arbitrary and unlawful (a) denial of the Church's application to remove an existing 2013 Special Permit restriction requiring that the Church's community center's hall be used by "church members only" and not "rented out"; and (b) retroactive application of the City's zoning regulations effective on February 19, 2024 to prevent the Church's use of its community center and to impose new conditions not required when the Church's approximately 21,000 square foot church community center (including a 3,957 square foot hall with stage and bar area and adjoining commercial kitchen, meeting rooms, offices, classrooms) was approved, constructed, and occupied, which was predicated upon a misapplication of State and local law and improper deference to unfounded local community opposition.

3. Defendants' imposition of new post-construction and post-occupancy conditions is based in large part on its discriminatory determination that the Church's community center—a facility used for religious education, outreach, celebrations, the observance of various Greek Orthodox practices, and youth programming and activities—does not constitute a "religious facility" and Defendants' unequal treatment of the Church as compared to similarly situated religious and secular facilities. This determination imposes a substantial burden on the Church's religious exercise in violation of RLUIPA, 42 U.S.C. § 2000cc(a), without employing the least restrictive means of furthering any compelling governmental interest.

4. Defendants' retroactive application of the New Zoning Regulations (as defined herein) to the Church's community center—a facility that was permitted, fully constructed, and in active use under the prior zoning regulations—violates the Church's constitutionally protected property rights under the Fifth and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983.  The prior zoning code imposed no conditions on "places of worship, churches and church buildings" permitted by special permit, and the Special Permit issued for the Church's community center imposed no restrictions on the use of music or the types of events that could be held therein.

## PARTIES

5. Plaintiff THE ST. GEORGE GREEK ORTHODOX CHURCH OF NORWALK, CONNECTICUT, INC. ("Church") is a non-stock corporation formed under the Laws of the State of Connecticut on June 26, 1939.

6. Defendant CITY OF NORWALK ("City") is a municipality located in Fairfield County in the State of Connecticut.

7. Defendant CITY OF NORWALK PLANNING & ZONING COMMISSION ("Commission") is a planning and zoning commission authorized under Connecticut General Statutes Title 8, Chapter 124, Section 8-4a, the City of Norwalk Charter and City Code Article 79, consisting of nine members appointed by the Mayor of Norwalk with approval from the City Council.

8. Defendant CITY OF NORWALK CITY COUNCIL ("City Council") is the legislative branch of the City of Norwalk comprised of 15 members, whose statutory authority includes enacting laws, including zoning regulations.

9.  Defendant CITY OF NORWALK ZONING ENFORCEMENT OFFICER, in his or her official capacity ("ZEO"), is an employee of the City of Norwalk and is responsible for enforcing the City's zoning regulations.

10. Defendant CITY OF NORWALK ZONING INSPECTOR  in his or her official capacity ("Zoning Inspector"), is an employee of the City of Norwalk and is responsible for enforcing the City's zoning regulations.

11. Defendant  STEVEN  KLEPPIN,  CITY  OF  NORWALK  PLANNING  &  ZONING DIRECTOR ("P&Z Director"), in his official capacity, is the City's Planning & Zoning Director.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) in that this action arises under 42 U.S.C. § 2000cc *et seq.* and 42 U.S.C. § 1983. This Court also has supplemental jurisdiction over Count IX and Count X pursuant to 28 U.S.C. § 1367(a) for claims arising out of the same facts and circumstances brought under Connecticut statutes and constitution.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District, and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS
### The Church

14. The Church has existed and operated as a Greek Orthodox Church since 1939.

15. In 1940, the Church purchased property at 8 Fort Point Street in East Norwalk containing a small structure that had previously served as a Lutheran church, which the Church used for worship and gathering.

16. In 1968, the Church acquired an approximately 4.44-acre property at 238 West Rocks Road in Norwalk that was improved with a large residential structure, which property is the subject of this action ("Property").

17. Between 1968 and 1976, the Church used the church in East Norwalk for Greek Orthodox liturgies and used the large residential structure on the Property for gatherings, meetings and celebrations.

18. In 1976, the Church constructed another building on the Property for use as a religious sanctuary—a church structure designed in a Byzantine-type architectural style, featuring a sanctuary space with a prominent dome, arched entries, and ornate iconography.  Thereafter, the Property became the sole site used by the Church for its religious practices, observances and operations.

19.  In the 1980s, the Church renovated the residential structure on the Property to convert the upper-level bedrooms into classrooms and to remove the interior partition walls on the main level to create a hall (with kitchen) for gatherings, assembly, dances and celebrations ("Old Church Community Building").

Church Community Center

20. In 2006, the Church was granted a special permit (Special Permit No. 19-05 SP), which was subsequently modified and reapproved on April 17, 2013, allowing the Church to construct and operate an approximately 21,000 square foot "church community center" by constructing an addition to, and renovating the existing, Old Church Community Building on the Property.  The

Certificate of Special Permit was recorded in the Norwalk Town Clerk's Office on April 18, 2013 ("Special Permit"; Exhibit ("Ex.") "1").

21. The Special Permit approved detailed site, layout and floor plans for the 21,000 square foot "church community center" depicting the new and existing spaces with: (i) the new addition area including a 3,957 square foot hall with elevated stage and bar area, and adjoining commercial kitchen, classrooms, teacher's lounge and meeting rooms; and (ii) the renovated existing space (the Old Church Community Building area), including classrooms, youth room, church library/conference room, Priest's office, administrative offices and chapel.

22. The Special Permit contained certain conditions, including Condition 10 that the community center's "**hall** be used for church members only and not be rented out for any events" (*emphasis added*).

23. There were no conditions in the Special Permit regarding the use of any other spaces in the church community center or the Property.

24. There were no conditions in the Special Permit regarding use of music or restricting music use in any part of the church community center or the Property.

25. There were no conditions in the Special Permit on the types of activities or events that could be held in the church community center, including in the hall.

26. The Special Permit did not prevent or restrict the Church from holding or having events in the church community center, which based upon the plans before the Commission was clearly designed and intended for such a purpose, including in the community center's hall.

27. The only restriction on the community center related to the hall, and specifically, on the identity of its users—that the hall be used by "church members only" and not be "rented out."

28. In 2013, the Church began construction of the church community center with the foundation for the new addition largely completed in 2013.

29. Due to lack of funding, construction was forestalled but was completed by 2023 with the church community center in full use by Fall 2023.

30. Consistent with its longstanding use of the Old Church Community Building since the 1980s, the Church has continued to use the church community center for religious gatherings, assembly, dances, and celebrations in conjunction with the religious services held in the church building.

31. The Church has used the church community center for religious education, celebrations of the sacraments (such as baptism and marriage), memorial services (including Makaria, the traditional memorial dinner for the deceased), life-cycle celebrations, religious gatherings and assemblies, Church meetings, Greek Orthodox dance instruction and performances, and other religious, cultural, and community activities.

32. The Church has always used various forms of amplified music on its Property as part of its religious services inside and outside of the Church's sanctuary space.

33. Amplified music and dancing to such music are integral to the Church's religious exercise and have always been parts of the Church's use of the Old Church Community Building; and this has continued with the Church's use of the expanded and renovated church community center approved by Special Permit.

34. Since the opening of the church community center, amplified music—including recorded music and live bands—and dancing to such music have been an integral part of the Church's use of the church community center and central to many events held therein.

35. In accordance with the Special Permit, since the opening of the church community center, any arrangement the Church made for events in the hall was with Church members and not by rental.

Greek Orthodox Religion

36. In the Greek Orthodox faith, music is an essential form of prayer and theology. Music—including Byzantine chanting, choral and congregational singing, and liturgical hymns—is theology set to sound, and its practice is not limited to Sunday morning services in the church sanctuary.

37. From the earliest times, music and communal meals have played an important role in the Greek Orthodox faith. In the Old Testament, sacred music accompanied worship in the church, and festive meals marked religious celebrations and expressions of fellowship. The Psalms themselves testify to the use of singing and musical praise in worship. In the New Testament, Christians gathered not only for prayer, but also the breaking of bread and fellowship meals, often called *Agape* (Love Feasts). These meals strengthened the bonds of the faithful and expressed the unity of the Church as the Body of Christ (Acts 2:42, 46).

38. The Orthodox Church observes and continues this religious tradition of communal fellowship through parish meals, festivals, and celebrations following feast days and liturgical services. These gatherings provide opportunities for Orthodox Christians to deepen their relationships, practice hospitality, and strengthen the unity of the parish family.

39. Regarding music, within the Divine Services, the Greek Orthodox Church employs sacred chant and hymnography that direct the mind and heart toward God. At parish celebrations, weddings, christenings, festivals, and other communal events, cultural and traditional music accompany fellowship and rejoicing, reflecting the joy of the Christian community.

40. Dancing to music is deeply integrated into church events and plays an essential role in Greek Orthodox life. Dancing hand-in-hand reflects the spirit of "koinonia"—Orthodox fellowship and unity shared in communion with the divine.

41. The Church, like many Greek Orthodox churches, maintains dance instruction programs and dance groups where participants learn Greek dances set to music and learn about their faith in an Orthodox Christian environment.

42. Greek Orthodox festivals feature live music and public dancing, allowing churches to invite the broader community into their cultural celebrations and to learn about the Orthodox faith.

43. The Church, like other Greek Orthodox Churches, holds an annual Kefi Greek Festival where Kefi embodies the spirit of joy, passion, and an overwhelming zest for life.

44. Greek Orthodox ministries focus on education, charity, youth development, and spiritual outreach, all of which are designed to foster spiritual growth and serve the broader community.

45. The Church's mission includes spreading the Greek Orthodox faith through outreach, community ministry, and open worship, welcoming both members and non-members into its religious and cultural life.

46. Parish meals, festivals, ethnic celebrations, charity dinners, feast-day banquets and hosting family celebrations, provide opportunities to welcome parishioners and visitors to the Church, build relationships, and introduce people to the Orthodox faith in a warm and hospitable environment.

47. When combined, music and fellowship create natural opportunities for evangelism and community engagement. A church concert, cultural festival, or family celebration can open the doors of the Church to neighbors who might never otherwise enter. Through these gatherings, visitors experience the Orthodox Church.

48. Thus, both sacred music in worship and communal banquets in fellowship serve the same ultimate purpose: to glorify God and to build up the unity, love, and spiritual life of the faithful. As the Psalmist proclaims, "Behold, how good and pleasant it is for brethren to dwell together in unity" (Psalm 133:1).

49. As an expression of Christian love, these ministries fulfill Christ's call to be a light to the world. They help the parish fulfill its religious mission of being a welcoming spiritual home where all people can experience the beauty of Greek Orthodox faith and the fellowship of the Body of Christ. "Let your light so shine before men, that they may see your good works and glorify your Father in heaven" (Matthew 5:16).

Applicable Land Use Regulations

i.     *Prior Zoning*

50. During all times from when the Special Permit was recorded in the City land records in 2013 through the commencement of the use of the church community center (in Fall 2023), the Property was in the AAA Residence Zone.

51. The AAA Residence Zone allowed by special permit certain "uses and structures," including "places of worship, churches and church buildings" (prior Zoning Code § 118-310(B)(2)(b) attached as Ex. "2"). The Zoning Code imposed no conditions on "places of worship, churches and church buildings" uses and structures (prior Zoning Code § 118-310(B)(2)(b) attached as Ex. "2").

52. The only music-related restrictions on uses and structures allowed by Special Permit in the AAA Residential Zone were for "Athletic field facilities", including: (a) allowing the use of audio systems only for broadcasting athletic field events and half-time shows and prohibiting pre- or post-game music (prior Zoning Code § 118-310(B)(2)(l)(3) attached as part of Ex. "3") and (b)

requiring audio systems be turned off by 10:00 pm and not turned back on until 7:00 am (prior Zoning Code § 118-310(B)(2)(l)(3) attached as part of Ex. "2").

53. The Zoning Code contained no definition of "church building" and defined "community center" as "nonprofit facility for recreation, social or cultural activities under the management and unified control of the membership or the city" (prior Zoning Code § 118-100 (Definitions Section) relevant sections attached as Ex. "3").

ii.     *New Zoning*

54. After the Church's construction, occupancy and use of the church community center in accordance with the Special Permit, the City enacted new zoning regulations effective on February 19, 2024 ("New Zoning Regulations").

55. As a result of these New Zoning Regulations, the Property was rezoned from the AAA Residential Zone to the Community District ("CD") 1L zone.

56. In the CD-1L Zone, "religious facilities" are a permitted special permit use, but "Auditorium, Community Center or other Place of Assembly" uses are not permitted (New Zoning Regulations, Article 4, Table 4.3.9.A).

57. The New Zoning Regulations define the above terms as follows (New Zoning Regulations, Article 9):

> Religious Facilities: facilities used by a non-profit group or institution for organized religious services, meetings, **assembly**, practice, activities, and **supporting uses** (*emphasis added*).

> Community Center: a nonprofit facility for recreation, social or cultural activities under the management and unified control of the membership or the City.

> Auditorium: a room or Building use for holding meetings, workshops, lectures, civic activities, religious services, performances, and other similar activities

> Place of Assembly: a Civic Use characterized by people congregating regularly for participation in or holding meetings, workshops, lectures, civic activities,

**religious services, performances**, and other similar activities, including Buildings, facilities, and venues in which such functions and activities are held.

(*emphasis added*).

58. Although under the prior zoning the only music and audio restrictions on special permit uses in the AAA zone related to "Athletic field facilities," under the New Zoning Regulations:

a. "Live Music" (defined as "any form of musical entertainment performed live for patrons of a specific establishment, including but not limited to live bands, disc jockeys playing recorded music, and any music played using equipment that amplifies the music") (Zoning Regulations, Article 9)) is not permitted in the CD-1L Zone (with the exception of Silvermine Tavern Village District Overlay zone) (New Zoning Regulations, Table 4.3.9.D); and

b. "Event Space" (not defined in the New Zoning Regulations, Article 9) was made a Special Permit Use in the CD-1L Zone only in the Silvermine Tavern District Overlay zone (New Zoning Regulations, Table 4.3.9.A).

59. The Property is not in the Silvermine Tavern District Overlay zone, which was enacted by the City to enable the redevelopment of the former Silvermine Tavern and allow GrayBarns Inn and Tavern to operate an event venue with live music within the CD-IL zone.

<u>Notice of Violation</u>

60. On or about November 12, 2025 and January 6, 2026, Defendants ZEO and/or Zoning Inspector issued notices of violations to the Church alleging violations of the New Zoning Regulations:

Norwalk Building Zone Regs – 4.3.9.A (CD-1L Principal Uses – Pages 250-250) – Event Space not a permitted use in CD-1L.
To Wit: Community Center being used for unpermitted Event Space

61. The violations further provided that the Property is "not permitted to rent out community center for events" and directed that the Church "immediately cease unpermitted event hosting use at the community center."

62. On the dates of the violations, and since Fall 2023 (before the New Zoning Regulations were enacted), the Church had been using the church community center in accordance with the 2013 Special Permit granted under the prior zoning regulations.

63. The Church's use of its community center's hall for events (by Church members and without renting it out), lawfully commenced in accordance with the 2013 Special Permit granted under the prior zoning regulations, constitutes a pre-existing nonconforming use that is protected under Connecticut law and entitled to continue notwithstanding the subsequent adoption of the New Zoning Regulations. See Conn. Gen. Stat. §§ 8-2, 8-13a(a).

Pre-Application Meeting

64. Prior to the issuance of the notice of violations and in connection with the Church's request to construct a temporary festival pavilion, the Church appeared before the Commission on June 2, 2025.

65. That same day, the Church had a discussion with the P&Z Director about removing the Special Permit restriction.

66. The Church advised the Commission that its use of the church community center was consistent with how the Church had used its community building on the Property since the 1980s (the Old Church Community Building) and that its use of the church community center conformed to the Special Permit conditions.

67. The Church discussed seeking to remove or omit the Special Permit's restriction contained in Condition 10 given other religious and secular uses were not so restrained.

68. On or about November 9, 2025, Commission member Richard R. Roina, who was a former chair of the Commission and resides near the Church's Property, advised the Church that he

13

"suspects" the Church will file an application to amend its Special Permit and that while he previously recused himself from Church-related applications, he intended to resign from the Commission to oppose the Church's application.

69. The first violation was issued three days after Mr. Roina's pronouncement.

70. Mr. Roina subsequently resigned from the Commission.


Application to Commission

71. On February 18, 2026, the Church applied to the Commission and its application came on to be heard by the Commission at public hearings held on April 22, 2026, May 6, 2026 and June 3, 2026.

72. The Church application specifically provided that "no change" was being sought in connection with the Church's "existing use."

73. The Church challenged the notice of violation contending before the Commission that the New Zoning Regulations were inapplicable and should not have been the basis for alleged violations, because the Commission had already approved the use of the church community center as a place for events, gatherings, and celebrations under the prior zoning regulations.

74. The Special Permit granted by the Commission (recorded in 2013) approved a church community center with a 3,957 square foot hall with elevated stage and bar area and adjoining commercial kitchen in addition to other spaces (classrooms, offices, meeting rooms and other spaces) with no conditions on music nor the type of events.  Therefore, the Church already had the right to use the church community center (and its hall) for events, gathering and celebrations and to the extent the New Zoning Regulations prohibited such use, the Church's existing use constituted a protected pre-existing nonconforming use.

14

75. The Church also sought to modify the Special Permit to remove Condition 10.

76. The Church's proposed modification sought only to allow the hall space to be used by non-members without any change to the existing use itself—only the identity of the user—to remove the restriction limiting the "hall" use to "church members only" so that the hall could be used by members and non-members alike.

77. In support of the argument to remove Condition 10, the Church also proactively proposed new Special Permit conditions, including restrictions on the number of times the hall could be used by non-members.

78. The Commission's members demonstrated bias against the Church and that it was predisposed to deny the Church's application:

    a. One of its members, before the presentation of any evidence, took it upon himself to poison the proceedings by declaring that he had made up his mind and would vote no on the application, because approval would be "a disaster waiting to happen."

    b. One member urged his fellow members not to discuss the issues because "the more we say, easier to get sued."

    c. One member expressed concern whether the activities of the Church should be taxed and insinuated that the Church was not in compliance with tax laws.

    d. One member thought the whole issue was "very complicated" and that it was easier to just say no.

79. The Commission members further demonstrated bias against the Church by discussing and focusing on issues not properly before the Commission, including the Church's right to have music on its Property and at the community center.

80. The Commission was improperly swayed by community opposition, including the opposition from the former member and chair that resides near the Church and who expressly resigned from the Commission to oppose the Church's community center.

Planning & Zoning Director Memorandum

81. During the Commission's review process, the Defendant P&Z Director issued a memorandum dated May 1, 2026 ("May 2026 Memo," Ex. "4") to the Commission advising that prior to acting on the Church's application, the Commission must examine whether live music and events were permitted on the Church property based upon the New Zoning Regulations.

82. The May 2026 Memo provided that "Live Music" as defined in the New Zoning Regulations was not permitted on the Property (Ex. "4", p. 2).

83. The Planning & Zoning Director advised in the May 2026 Memo that: "Staff's position is that parties and events outside of church functions (church picnic, after service gatherings) involving a DJ or band would fall under the definition of Live Music and is not presently permitted at the zone, unless within the Silvermine Tavern Village District." (Ex. "4", p. 3.)  He also opined that "[o]bviously, there is a clear distinction between music in conjunction as part of a religious service and an outside event, such as a wedding where there may be a band or a DJ." (Ex. "4", p. 3).

84. In the Greek Orthodox tradition, weddings are sacramental religious services—not secular social events—which are celebrated inside and outside of the church sanctuary.

85. The May 2026 Memo also advised that "staff is also researching the other religious facilities in the single-family zones to ascertain if others are renting space for outside events." (Ex. "4", p. 3).

Commission's Determination

86. At the Commission's June 3, 2026 regular meeting, it adopted the following resolution:

**WHEREAS**, the Commission has determined the proposed use for an event space within the community center/hall is inconsistent with the definition of a Religious Facility;

**WHEREAS**, the Commission has determined that Live Music is not permitted in this zone;

**WHEREAS**, the Commission has determined that Event Space is not permitted in this zone;

**WHEREAS**, the Commission reaffirms that the originally approved community center/hall was to be used for church members only and not to be rented out for any events;

**NOW, THEREFORE, BE IT RESOLVED,** by the Norwalk Planning & Zoning Commission, that #2026-13 St. SP Saint George Greek Orthodox Church – 238 West Rocks Rd. – Special Permit Modification to allow event space **be denied**.

87. Not only did this resolution deny the Church's request to modify Condition 10 of the 2013 Special Permit, but it went even further by determining (i) integral parts of the church community center operations, such as events and live music, were not permitted due to the 2024 zoning amendments and (ii) the limitation in Condition 10 was broader than it actually was by stating it applied to the entire church community center (where the 2013 Special Permit only stated the "hall") and appearing to take the position that no events were permitted by the 2013 Special Permit, instead of just those events where the hall was rented out to non-members.

88. The Church's counsel was advised of this determination by letter dated June 9, 2026 (Ex. "5").

89. The Commission's decision was published

<u>Discrimination against the Church</u>

90. The Commission's determination that the New Zoning Regulations apply so as to impose new conditions—prohibiting events and live music—on the church community center, which received a Special Permit and was fully constructed and in use prior to the adoption of the New Zoning Regulations, was improper and unlawful.  The Church possesses a vested right to continue the use that lawfully existed prior to the adoption of the New Zoning Regulations. The Commission's determination constitutes the imposition or implementation of a land use regulation that imposes a substantial burden on the Church's religious exercise and severely impedes the Church's ability to practice and observe its faith and prevents the Church's exercise of religion.

91. The Commission's denial of the Church's request to modify the Special Permit (to remove the restriction on non-members using the hall) constitutes the imposition or implementation of a land use regulation that imposes a substantial burden on the Church's religious exercise, in violation of 42 U.S.C. § 2000cc(a), without employing the least restrictive means of furthering any compelling governmental interest.

92. Other religious institutions located in the City of Norwalk—including St. Matthew Catholic Church, Calvary Baptist Church, Temple Beth El, United Congregational Church of Norwalk, Miracle Temple Church of God in Christ, First Congregational Church, and Beth Israel Chabad—offer hall rentals and rentals of other spaces to non-members for gatherings, celebrations, life-cycle events, meetings, concerts, and/or receptions, and some of these institutions are currently located in the same zone (CD-1L) as the Church.

18

93. There are other uses that have been rendered nonconforming by the New Zoning Regulations that Defendants do not seek to prevent, restrict or limit by retroactive application of the New Zoning Regulations.

94. As a result of the New Zoning Regulations, the Silvermine Golf Club (located at 95 N. Seir Road, Norwalk, CT 06850) was rezoned, like the Church, from the AAA zone to the CD-1L Zone.

95. The Silvermine Golf Club maintains a clubhouse on its property, which it uses for dinners, parties, celebrations and other such gatherings and often utilizes amplified music during such events.

96. Upon information and belief, the Silvermine Golf Club allows club members to host non-members or arrange for non-members' use of the clubhouse for parties, celebrations and other events.

97. Since the City's enactment of the New Zoning Regulations, the Silvermine Golf Club has continued to have dinners, events, parties and celebrations with amplified music at its clubhouse.

98. Since the City's enactment of the New Zoning Regulations, Defendants have not, upon information and belief, issued violations to the Silvermine Golf Club alleging violations of the New Zoning Regulations for alleged unpermitted events, for event space not permitted in the CD-IL or for having live music.

99. As a result of the New Zoning Regulations, Shorehaven Golf Club (located at 14 Canfield Avenue, Norwalk, CT 06855) was rezoned, like the Church, from the AAA Zone to the CD-1L Zone.

100.     Shorehaven Golf Club maintains building facilities on its property, including a ballroom, for parties, celebrations, events and other gatherings and often uses amplified music (including music from DJs and live bands) during such events.

19

101.	Upon information and belief, Shorehaven Golf Club allows club members to host nonmembers or arrange for non-members' use of the club's facilities for parties, celebrations, and other events.

102.	Shorehaven Golf Club's website provides "Shorehaven is available throughout the year for private member-sponsored events, such as weddings, family celebrations, baby showers, corporate/non-profit events, and golf outings. From an intimate gourmet luncheon in one of our private event rooms to a grand celebration in our main ballroom, the club offers a range of settings for the perfect event" (see Ex. "6").

103.	Since the City's enactment of the New Zoning Regulations, Shorehaven Golf Club has continued to have dinners, events, parties and celebrations with amplified music at its facilities.

104.	Since the City's enactment of the New Zoning Regulations, Defendants have not, upon information and belief, issued violations to the Shorehaven Golf Club alleging violations of the New Zoning Regulations for alleged unpermitted events, for event space not permitted in the CD-IL or for having live music.

105.	As a result of the New Zoning Regulations, three religious institutions (Saint Matthew Catholic Church located at 215 Scribner Avenue, Norwalk, CT 06854, Temple Shalom located at 259 Richards Avenue, Norwalk, CT 06854 and United Congregational Church located at 275 Richards Avenue, Norwalk, CT 06850) were all rezoned, like the Church, from the AAA zone to the CD-1L zone.

106.	Upon information and belief, these three religious institutions have facilities on site used for events, parties and celebrations with amplified music used at such events.

107.	The United Congregational Church's website advertises space available to nonmembers of the Church: "Love our space?  Need a venue for an event?  You can rent our

space!  Just complete the form below either on-line or by printing out the pdf version and emailing it to office@uccnorwalk.com" (see Ex. "7").

108. After the enactment of the New Zoning Regulations, upon information and belief, Temple Shalom has held various parties, celebrations and events in its facilities that utilized amplified music, including but not limited to, its annual gala and musical concert.

109. Since the City's enactment of the New Zoning Regulations, Defendants have not, upon information and belief, issued violations to these three religious institutions (Saint Matthew Catholic Church, Temple Shalom and United Congregational Church) alleging violations of the New Zoning Regulations for alleged unpermitted events, for event space not permitted in the CD-IL or for having live music.

110. The New Zoning Regulations incorporated a special overlay district to accommodate the continuation of an existing use (GrayBarns (the Inn and Tavern)) in the Silvermine Tavern Village District Overlay zone so it could continue to operate with live music and events without the restrictions that come with a use being rendered nonconforming (such as not being able to alter or expand the use) by rezoning such property into the CD-1L Zone.

111. Not only was the Church's existing use of its community center rendered nonconforming by the adoption of the New Zoning Regulations, but Defendants also unlawfully applied the New Zoning Regulations to the Church in an effort to retroactively apply conditions and restrictions not in effect when the Church's community center building was approved, fully constructed and occupied.

112. Defendants' land use interpretations and decisions impose a substantial burden on the Church's religious exercise by preventing or curtailing the Church's use of music, thereby

inhibiting the Church's continued use of its community center to observe and practice its sincerely held religious beliefs.

113. Defendants' land use interpretations and decisions impose a substantial burden on the Church's religious exercise by preventing or curtailing the Church's use of its community center for events, thereby inhibiting the Church's ability to observe and practice its core religious beliefs and to accommodate its religious needs.

114. Defendants' land use interpretations and decisions impose a substantial burden on the Church's religious exercise by preventing or curtailing the Church's use of its community center for non-members, thereby impairing the Church's ministry to spread the Greek Orthodox faith through outreach and community ministry, and inhibiting the Church's ability to observe and practice its sincerely held religious beliefs and to accommodate its religious needs.

115. Defendants' land use interpretations and decisions substantially burden the Church's exercise of religion by preventing, restricting, or dictating who may use the church community center (or parts of the community center), thereby preventing the Church's continued use of its community center to observe and practice its religious beliefs and to accommodate its religious needs.

116. Defendants' land use interpretations, applications, and decisions significantly diminish the Church's ability to carry out its religious mission and religious practices.

117. The Church's operation of the church community center impacts interstate commerce in that it serves as a site for ongoing fundraising and receipt of charitable donations from persons working or living outside of Connecticut; provides a place of worship and religious education for persons residing outside of Connecticut, which involves interstate travel; and

provides a center for Greek Orthodox faith and culture, the use of which involves interstate communications and travel.

118.    Through Defendants' implementations of land use regulations or system of land use regulations that imposes a substantial burden on the Church's religious exercise, Defendants make or have made individual assessments of the proposed uses for the Property.

119.    The Defendants' actions all took place under color of state law.

120.    The harm to the Church caused by Defendants' laws and/or application of such laws and actions, which prevent the Church from using the church community center to accommodate its religious needs, is immediate and severe.

121.    Defendants' conduct constitutes official activity, as a result of which, Defendants are liable to the Church for the consequences of Defendants' actions.

122.    The Church has no adequate remedy at law for the harm and damage caused by Defendants' wrongful laws and actions.

**COUNT I**
**United States Constitution**
**42 U.S.C. § 1983: Fourteenth Amendment Due Process**
**(Incorporating Fifth Amendment Takings Principles)**
**Property Rights**

123.    The allegations set forth in paragraphs 1 through 122 are incorporated by reference as if fully set forth herein.

124.    The Church was granted a Special Permit for a "church community center" with a 3,957 square foot hall with stage and bar area and adjoining commercial kitchen, and after such church community center was not only fully constructed in reliance upon lawfully issued permits, but used and occupied by the Church, the City rezoned the Property from the AAA Zone that

permitted "places of worship, churches and church buildings" with no conditions on such uses and structures, into the CD-1L Zone that specifically prohibited "Live Music" (defined as including music played "using equipment that amplifies the music") and "Event Space" (except for in the Silvermine Tavern Overlay District).

125.    The Church was granted a Special Permit for a "church community center" and after obtaining all approvals and permits for such church community center and fully constructing and occupying its community center building, the City rezoned the Property into the CD-1L zone that specifically prohibits "Auditorium, Community Center or other Place of Assembly" uses.

126.    Under the Special Permit issued for the Church's community center there was no condition on use of music at the hall nor the types of hall events at the church community center (only per the Special Permit, the type of user of the hall – "church members only" – and that they could not "rent" the hall for an event).

127.    The Church maintains a vested right in the use of the church community center that existed and lawfully operated prior to the adoption of the New Zoning Regulations.

128.    Under Connecticut law, zoning regulations cannot bar uses that existed when the regulations were adopted.

129.    Under Connecticut statutory law, municipalities cannot eliminate nonconforming uses through the enactment or amendment of its zoning regulations (Conn. Gen. Stat. §§ 8-2, 8-13a(a)).

130.    The Church maintains a constitutionally protected right to continue the use of the Property, including the use of the church community center and the hall, that existed prior to the adoption of the New Zoning Regulations.

24

131.    The Church maintains a constitutionally protected property right to continue to use the community center for events and to continue to have music (by amplification, by live band or DJ or otherwise) at the church community center.

132.    Defendants' determinations and interpretations of the New Zoning Regulations or application of the New Zoning Regulations to prevent or retroactively apply conditions to a use approved, constructed and occupied prior to the New Zoning Regulations' adoption are unlawful, outrageously arbitrary and/or a gross abuse of governmental authority.

133.    Upon information and belief, Defendants harbor personal animus against the Church and its religious exercise.

134.    Defendants deprived the Church of its constitutionally protected property rights, as secured by the Fourteenth Amendment to the United States Constitution (incorporating the Fifth Amendment's prohibition against the taking of private property without just compensation), without due process of law or just compensation.

## COUNT II
### Violation of RLUIPA
### "Substantial Burdens"
### 42 U.S.C. § 2000cc(a)

135.    The allegations set forth in paragraphs 1 through 134 are incorporated by reference as if fully set forth herein.

136.    Defendants deprived the Church of its right to the free exercise of religion, as secured by RLUIPA, 42 U.S.C. § 2000cc(a), by imposing and implementing land use regulations in a manner that imposes a substantial burden on the Church's sincerely held religious exercise without employing the least restrictive means of furthering a compelling governmental interest.

## COUNT III
### Violation of RLUIPA
### "Nondiscrimination"
### 42 U.S.C. § 2000cc(b)(2)

137.     The allegations set forth in paragraphs 1 through 136 are incorporated by reference as if fully set forth herein.

138.     Defendants deprived the Church of its right to the free exercise of religion, as secured by RLUIPA, 42 U.S.C. § 2000cc(b)(2), by imposing and implementing land use regulations in a manner that discriminates against the Church on the basis of religion or religious denomination.

## COUNT IV
### Violation of RLUIPA
### "Total Exclusion": Unreasonable Limitation
### 42 U.S.C. § 2000cc(b)(3)(A)

139.     The allegations set forth in paragraphs 1 through 138 are incorporated by reference as if fully set forth herein.

140.     The combined effect of the New Zoning Regulations—prohibiting live music, prohibiting event space, and the Commission's refusal to modify the members-only restriction—effectively excludes the Church's religious assembly activities from the CD-1L Zone, particularly when secular comparators (the two golf clubs) are permitted to continue to utilize their facilities as event space, have live music and member-sponsored or arranged events..

141.     Defendants deprived the Church of its right to the free exercise of religion, as secured by RLUIPA, 42 U.S.C. § 2000cc(b)(3)(A), by imposing and implementing land use regulations that unreasonably exclude religious assemblies, institutions, and structures within the jurisdiction of the City of Norwalk.

26

**COUNT V**
**Violation of RLUIPA**
**"Exclusion and Limits": Unreasonable Limitation**
**42 U.S.C. § 2000cc(b)(3)(B)**

142.     The allegations set forth in paragraphs 1 through 141 are incorporated by reference as if fully set forth herein.

143.     Defendants deprived the Church of its right to the free exercise of religion, as secured by RLUIPA, 42 U.S.C. § 2000cc(b)(3)(B), by imposing and implementing land use regulations that unreasonably limit religious assemblies, institutions, and structures within the jurisdiction of the City of Norwalk.

**COUNT VI**
**Violation of RLUIPA**
**"Equal terms"**
**42 U.S.C. § 2000cc(b)(1)**

144.     The allegations set forth in paragraphs 1 through 143 are incorporated by reference as if fully set forth herein.

145.     In gross abuse of authority, Defendants unlawfully applied the New Zoning Regulations to prevent or retroactively apply conditions to the Church's church community center use that existed prior to the adoption of the New Zoning Regulations.

146.     Defendants have failed to enforce the New Zoning Regulations to retroactively apply restrictions or conditions to regulate or restrict other uses rendered nonconforming by those same regulations.

147.     Defendants deprived the Church of its right to the free exercise of religion, as secured by RLUIPA, 42 U.S.C. § 2000cc(b)(1), by implementing and imposing land use regulations that treat the Church on less than equal terms with nonreligious assemblies and institutions.

**COUNT VII**
**United States Constitution**
**42 U.S.C. § 1983: First Amendment**
**Free Exercise of Religion**

148.     The allegations set forth in paragraphs 1 through 147 are incorporated by reference as if fully set forth herein.

149.     Defendants deprived the Church of its right to free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by substantially burdening the Church's sincerely held religious exercise without employing the least restrictive means of furthering a compelling governmental interest; by discriminating against the Church on the basis of religion in a manner that is not the least restrictive means of furthering a compelling governmental interest; and by burdening the Church's religious exercise through the application of land use regulations not neutrally applied.

150.     Alternatively, Defendants deprived the Church of its right to free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by burdening the Church's religious exercise in a manner that is not rationally related to a legitimate governmental interest.

## COUNT VIII
### United States Constitution
### 42 U.S.C. § 1983: Fourteenth Amendment
### Equal Protection

151.     The allegations set forth in paragraphs 1 through 149 are incorporated by reference as if fully set forth herein.

152.     The New Zoning Regulations and/or any attempt to apply the New Zoning Regulations retroactively to prevent or restrict a use existing prior to the adoption thereof arbitrarily singles out the Church for different and less favorable treatment than other similarly situated properties.

153.     Defendants have treated the Church as a "class of one," singling it out for disfavored treatment without any rational basis.

154.     In gross abuse of authority, Defendants have unequally applied the New Zoning Regulations to prevent and restrict a use existing before the enactment of the New Zoning Regulations when not so enforcing or applying the New Zoning Regulations retroactively against all others.

155.     Defendants deprived the Church of its right to equal protection of the laws, as secured by the Fourteenth Amendment to the United States Constitution, by discriminating against the Church in the imposition and implementation of their land use regulations.

### COUNT IX
### C.G.S.A. § 8-8

156.     The allegations set forth in paragraphs 1 through 155 are incorporated by reference as if fully set forth herein.

157.     The Commission's action in denying the Church's application and imposing additional restrictions on an existing use was illegal, unlawful, arbitrary, capricious, contrary to the substantial evidence in the record, and in abuse of the powers vested in the Commission under the statutes of the State of Connecticut and the applicable Regulations, for one or more of the following reasons:

(a) The Commission arbitrarily denied the Church's application based upon its wrongful and unlawful retroactive application of the New Zoning Regulations to a use approved, constructed and occupied prior to the adoption of the New Zoning Regulations;

(b) The Commission arbitrarily denied the Church's application based upon its misapplication of the New Zoning Regulations.

(c) The Commission arbitrarily denied the Church's application based upon alleged precedent and its misplaced concern that other religious institutions would have events. Aside from precedent not being a lawful basis to deny the Church's application, the Commission arbitrarily and wrongfully failed to consider that the Commission already issued a Special Permit to the Church for a community center with a 3,957 square foot hall with stage and bar area and adjoining commercial kitchen and had completed construction prior to the enactment of the New Zoning Regulations. Any other religious institution would have to likewise seek a special permit, but such special permit would be issued under the current zoning regulations (the New Zoning Regulations).  Thus, granting the Church's application would not create a precedent.

(d) The Commission arbitrarily failed to consider that the use of amplified music – through recordings, DJs and otherwise – existed on the Church Property and was not previously precluded or restricted through the issuance of the Special Permit.

(e) The Commission arbitrarily failed to consider that the use of the Property for events existed on the Church Property and was not precluded or restricted through the issuance of the Special Permit (other than who could utilize the space for an event).

(f) The Commission arbitrarily expanded its restrictions in Condition 10 of the 2013 Special Permit, which only addressed the "hall", to claim it applied to the "community center/hall," which is a much more expansive space that has a variety of different approved uses.

(g) The Commission arbitrarily determined that it "reaffirms" that the "originally approved community center/hall was to be used for church members only and not to be rented out for any events" when the Special Permit did not preclude the use of the community center building for events – only that the "hall" be for members' use only and not "rented out."

(h) The Commission arbitrarily attempted to retroactively impose conditions on the 2013 Special Permit precluding events when the Special Permit approved a 3,957 square foot hall with stage and bar area and adjoining commercial kitchen.  There were no conditions in the Special Permit on the types of activities or events that could be held in the church community center, including in the banquet hall.  The Special Permit did not prevent or restrict the Church from holding or having events in the church's community center, including in the hall.

(i) Based upon its arbitrary interpretation of the Special Permit, the Commission arbitrarily denied the Church's request to modify the Special Permit by removing Condition 10.

(j) In an arbitrary attempt to retroactively apply conditions to an existing use, the Commission made improper rulings and findings regarding music and types of events that were not before the Commission and beyond its authority.

(k) The Commission arbitrarily attempted to take away or eliminate the Church's protected property rights.

(l) The Commission failed to identify substantial evidence in the record to support denial as required by § 8-8(j).

158. The Church, as the owner of the Property and the Applicant to the Commission, is aggrieved as a result of the Commission's actions with regard to the denial of its application and application of the New Zoning Regulations.

159. The Citation and Recognizance to the Commission is attached as Ex. "8".

**COUNT X**
**Connecticut Constitution and Religious Freedom Act**
**C.G.S.A. § 52-571b**

160. The allegations set forth in paragraphs 1 through 159 are incorporated by reference as if fully set forth herein.

161. The Commission's decision arbitrarily restricts the Church's use of its community center, thereby violating the rights of the Church and its congregation to the exercise and enjoyment of religious worship without discrimination under Article 1, Section 3 of the Connecticut Constitution.

162. Defendants deprived the Church of its right to the free exercise of religion, as secured by Conn. Gen. Stat. § 52-571b, by imposing and implementing a land use regulation that discriminates against the Church on the basis of its religious beliefs and burdens the Church's religious exercise in a manner that neither furthers a compelling governmental interest nor uses the least restrictive means to achieve any such interest.

**PRAYER FOR RELIEF**

WHEREFORE, the Church respectfully requests that this Court grant the following relief:

1.  An award of compensatory damages against Defendants in favor of the Church as the Court deems just for the loss of the Church's rights under the First and Fourteenth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq., and the Connecticut Religious Freedom Act, Conn. Gen. Stat. § 52-571b, incurred by the Church as a direct and proximate result of Defendants' unlawful actions;

2.  An award of compensatory damages against Defendants in favor of the Church as the Court deems just for the deprivation of the Church's constitutionally protected property rights under the Fourteenth Amendment to the United States Constitution (incorporating the Fifth Amendment's prohibition against the taking of private property without just compensation), enforceable through 42 U.S.C. § 1983, incurred by the Church as a direct and proximate result of Defendants' unlawful actions;

3.  A declaration that the Commission acted illegally, arbitrarily, and in abuse of its discretion; an order sustaining Defendants' appeal and directing approval of the Church's application; and a declaration that the Commission's findings and determination are void and of no force or effect;

4.  An order directing the Commission to reverse its June 3, 2026 determination imposing additional conditions and to grant the Church's requested modification of the Special Permit as set forth in its application;

5.  An order enjoining Defendants, their officers, employees, agents, successors, and all others acting in concert with them from applying their laws in a manner that violates the Free

Exercise Clause of the First Amendment to the United States Constitution, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq., and the Connecticut Religious Freedom Act, Conn. Gen. Stat. § 52-571b, or from undertaking any action in furtherance of these discriminatory and disparate acts; and specifically, an order enjoining Defendants from taking any action to prevent, prohibit, or restrict music, events, or gatherings at the Church's community center or the Property;

6. An award of the Church's full costs and attorneys' fees arising out of Defendants' action and land use decision and out of this litigation and pursuant to Conn. Gen. Stat. § 8-8(l) and 42 U.S.C. § 1988; and

7. Such other and further relief as this Court may deem just and appropriate.

THE PLAINTIFF
THE ST GEORGE GREEK ORTHODOX
CHURCH OF NORWALK, CONNECTICUT, INC.

By:   /s/ Peter V. Lathouris
      Peter V. Lathouris, Esq.
      Law Offices of Peter V. Lathouris, LLC
      1100 Summer Street
      Stamford, CT 06905
      Telephone No.: (203) 359-2047
      Email: pvl@lathourislaw.com
      Fed Bar # CT09056


      Katherine Zalantis, Esq.
      Admitted in NY, CT, SDNY, EDNY,
      pro hac vice pending
      Silverberg Zalantis LLC
      120 White Plains Road
      Tarrytown, NY 10591
      (914) 682-0707
      Email: zalantis@szlawfirm.net